Administrators of Fulkerson vs. State of Missouri, use of, &c.

ADMINISTRATORS OF FULKERSON, ET AL. vs. STATE OF MISSOURI USE OF ST. CHARLES COUNTY.

1. Unless unusual hardship or injustice appears in the refusal of a circuit judge to put the plaintiff to an election, as to which of several breaches is intended to be relied on, the exercise of such discretionary power will not be disturbed.

2. A sheriff is *ex-officio* collector until the 1st of January next, succeeding the expiration o f his term of office as sheriff, and if such sheriff, on the expiration of his term as sheriff fail or refuse to qualify as collector, the vacancy in the office of collector, can be filled by the Governor. See 10 Mo. Rep. 681.

3. A variance between a *declaration* and bond may be remedied by amendment, and if the bill of exceptions shows, it was permitted and made, it does not matter that the declaration itself, as it purports to be copied in the records appears *not* to have been altered.

## ERROR to St. Charles Circuit Court.

BATES & COALTER, for plaintiff in error.

1st. The circuit court ought to have put the plaintiff to his election between his creditory breaches (as moved by defendants).

2nd. The commission of Fulkerson, as collector, was not lawful testimony, and ought to have been rejected.

3rd. The bond ought not to have been admitted in evidence, when objected to for variance under the plea of *non est factum.* And herein:

1st. The bond bears date October 30th, the declaration stated it as of October 13th.

2nd. The court gave the plaintiff leave to amend the declaration, too late, and for a wrong reason, to-wit: that the defendant's counsel refused to say "that the amendment took them by surprise."

3rd. The amendment was not made. The record still shows the variance.

4th. The account purporting to be between Fulkerson and the county, set forth in the record and explained by Dr. Powell's oral testimony, was unlawful testimony. The statute provides other and different evidence. This is not, and does not purport to be a settlement with the county court. R. C. Revenue, art. 4.

5th. The damages assessed were excessive in fact, and illegal in principle, even as to Fulkerson himself;

And 6th, as to his securities, its is illegal, unjust and oppressive; because the damages are swelled by adding to the principal and interest, alleged to be due, the 2½ per cent. a month, mentioned in the 5th section of the fourth article of the Revenue Law of 1835.

7th. The demurrer to the plea of covin in the Governor, was erroneously sustained, because the plea was a good bar to the action, but if not the declaration is ill.

8th. The court failed to find the truth of all or any of the breaches assigned in the declaration, as required by the law of penal bonds.

9th. The judgment as entered of record is wrong in this, that it is not for the penal sum mentioned in the bond.

 

Administrators of Fulkerson vs. State of Missouri, use of, &c.

LAMB, for defendant in error.

I. Upon the whole matter submitted, the judgment was for the right party, and if so this court will not disturb that judgment. Wear vs. McCorkle, 1 Mo. R., 588.

II. Should there appear any objection to the mere form of the judgment, the same will not be reversed on that account. This court will proceed to give such judgment as the circuit court should have given upon the whole matter submitted.

III. It is not perceived that the circuit court committed any error in refusing to compel the plaintiff to elect, upon which of the breaches she intended to rely.

The plaintiff had a right, on principles of all pleadings to so frame her declaration as to meet any possible contingency in the evidence.

In assumpsit plaintiff has a right in order to meet the evidence to set out not only the special promise upon which he mainly relies, but also common counts, which he does not expect to prove, except some misfortune should attend the proof upon the special count. So a defendant in assumpsit may set up, by way of defence, not only non-assumpsit, but may admit the assumpsit and set up limitation, coverture or infancy in the same suit; and in neither case can the court compel the plaintiff to elect upon which count in his declaration he intends to rely, nor the defendant to elect upon which of his pleas he stands.

So in suits upon penal bonds it is submitted that plaintiff may assign as many breaches as he may deem necessary, and by so doing he certainly does not take the defendant by surprise, but on the contrary fully apprises him what he has to defend against.

IV. It is contended that the court committed no error in refusing to declare that if the court, sitting as a jury, should find for the plaintiff it should determine which of the breaches assigned was true and which false. It is only the province of the jury to find upon the issues submitted. The issues submitted in this cause were all acted upon by the court sitting as a jury, as will appear from the verdict rendered. These issues being found, necessarily decides upon the truth or falsity of the breaches assigned. The verdict was sufficiently explicit to enable the court to enter up a judgment.

V. The did not err in entering up judgment against the securities as well as the principal for the full amount of $5,253 79.

The object of the law in imposing $2\frac{1}{2}$ per cent. per month, for failing to pay over money when collected, is not to inflict a personal punishment upon the delinquent officer. If this were so, certainly the statute would not direct that the remedy for this direliction of duty should be by suit upon the official bond. See Rev. C., '35, p. 540, sec. 5; upon which securities as well as principal are liable. It is submitted that this $2\frac{1}{2}$ per cent. per month is imposed by law solely as a fair remuneration to the county, which has been kept out of her revenue, the only means by which her internal regulations are carried on; and without which, in all probability, she would be compelled to negotiate loans at great sacrifices and inconveniences.

VI. The court committed no error in admitting the book belonging to the county court office, to be read in evidence after the same had been explained by Dr Powell, the former clerk. It was cumulative evidence to prove the amount that had been collected and not paid over.

The charges in this book were made by the clerk, and it will be presumed the same were properly made until the contrary is shown.

VII. As to the point raised by the counsel for the plaintiff in error, "that the commission of Fulkerson was a nullity, and all the proceedings under it were void," it is necessary to remark that this question was fully discussed and determined when the cause was here before—See 10 Mo. R., 681.

BIRCH, J., delivered the opinion of the court.

It appears by the record of the St. Charles county court, as embo-

died in the record before us, that on the 26th day of August, 1840, it was ordered that it be certified to the governor, that David McCausland, the late sheriff of the county, had declined to act as its collector, and refused to give bond as such. On the 21st day of September following, the governor commissioned William M. Fulkerson as collector, who gave bond on the 30th of October ensuing, and received the tax books for collection some time in the succeeding month of November. His oath of office annexed to his commission is dated on the 6th of November. An action was brought against him and his securities in March, 1842; the alleged breaches of the bond being,

1. That he did not, nor would, discharge the duties devolving upon him as collector.

2. That he did not, nor would, collect the revenue according to the tax list furnished him, amounting to $2000.

3. That he did collect the sum of $2000 in taxes due on said list, and neglected and refused to pay it into the county treasury according to law, to wit: on the second day of June, 1841.

4. That on the first day of March, 1842, whilst still continuing collector, and after having collected $2000 from various persons from whom taxes were due upon the lists which were given him as collector, he did not and would not pay over the same, or any part thereof to the treasurer of said county. And,

5. That on the 6th of November, 1840, and afterwards, he collected, in virtue of his said office, for licenses issued to various persons in said county, the sum of $1000, which he neglected and refused to pay to the treasurer, as required by law.

The declaration concludes with the usual profert of the bond sued on, which is in the usual form.

It is deemed unnecessary to further notice the subsequent pleading, than to state that they sufficiently put in issue the principal points relied upon in this count, namely, that the commission issued by the governor was unauthorized and the bond sued on invalid; or that if even authorized, Fulkerson was not guilty of the breaches complained of.

The bill of exceptions shows that "before any statement of the case, or evidence was given on either side, the defendants moved the court to put the plaintiff to her election, as to which of her several breaches she intended to rely upon, on the ground that some of them were contradictory and repugnant to each other," and that this motion was overruled and excepted to. No adjudged cases being referred to in derogation of the discretion which was exercised upon this point by the court below, and no unusual hardship or injustice being perceived to

have resulted from it, the action of the circuit judge in that respect will of course remain without criticism or reprehension here.

We think, also, that the court properly sustained the demurrer to the defendant's plea of covin, in respect to the commission issued by the governor. The first, second and third sections of the third article of the revenue act of 1835, being the act in force at the time the court made the order, and the governor issued the commission, are as follows :

"§ 1. Every sheriff hereafter elected shall be ex-officio collector of the revenue within his county, for two years, commencing on the first day of January next ensuing his election.

§ 2. Every sheriff shall, each year, before entering upon the duties of his office as collector, give bond and security to the State, to the satisfaction of the court, in a sum at least double the amount of all the revenue to be collected by him, conditioned for the faithful performance of all the duties of such office.

§ 3. If any sheriff shall neglect or refuse to give bond as required by the second section of this article, his office of sheriff shall, immediately upon such neglect or refusal be vacant, and the county court shall thereupon immediately notify the governor of that fact, who shall forthwith appoint some suitable person to fill such vacancy, who will give such bond."

Understanding the point most strongly pressed in this connection in the argument of the senior counsel for the appellants to be, that these sections conferred upon the executive no authority to appoint a *collector* (per se,) and that therefore the commission offered in evidence was invalid, and should have been rejected as evidence, we have carefully re-examined the somewhat elaborate opinion of a former bench of this court, where the same question was substantially before it some three years ago, (10 Mo. R. 681,) and find nothing to dissent from, either as to the reasoning or the conclusion there arrived at.

The sheriff who was superseded by the election in August, was ex-officio the collector until January following; and it was his refusal to give bond as *collector*, that rendered that office vacant, and not the office of sheriff, which had just then been filled by a new man, upon whom the law did not devolve the duties of collector for that year, but for the two succeeding ones. The duty of the governor, therefore, in relation to the vacancy in this "ex-officio" office, would seem to have been as imperative as it could be in relation to any other vacancy; the law under which he had acted being but an amplification or application of the constitutional requisition upon the general subject.

It may, however, not be improper to add, that had the exercise of the prerogative in question had for its basis even a more ambiguous or doubtful authority than the construction of which the enactment seems to be so clearly, if not alone, susceptible, a judicial tribunal would perhaps still more doubtingly admit a party who had sought and realized the benifit of one construction of it, to subsequently interpose a different and an opposite one, in order to escape its burdens. The occasion not seeming to demand the elaboration of this principle, we content ourselves with its mere suggestion.

This opinion, virtually disposing, also, of the question respecting the validity of the bond, its admissibility in evidence, in support of the declaration depends solely upon the question whether it was competent for the court to permit the plaintiff (as it did) to change the date of its alleged execution, as set out in the declaration, in such manner as to conform it to the actual date of the bond itself. The bill of exceptions shews that this change was permitted and made, and although the declaration itself, as it purports to be copied in the record before us, appears not to have been altered, we apprehend the seeming clerical omission to erase the word "thirteenth," and insert the word "thirtieth," should not prevail against the admission that it was actually done. No objection therefore, is perceived, that after the variance was thus reconciled, the court permitted the bond to be read in evidence, and the cause to proceed, particularly as there was no pretence nor objection, that the mere verbal amendment thus permitted took the defendants in any sense by surprise.

The plaintiffs then offered a statement of an account against Fulkerson, (as collector) contained in a book produced by the clerk of the county court, to the reception of which the defendants objected. Thereupon, Ludwell E. Powell, a witness, stated that he was clerk of the county court in October, 1840, and that he recognized the book as having then belonged to his office ; that he could not say positively that the collector was present when the entries in said book of the items of account were made ; that the body of the account was in the hand writing of the witness, but that the entries of the collector's per cent. were not ; that he (witness) put down the debit side of the account from the tax books that were delivered to the collector, and that Fulkerson (the collector,) he supposed, must have furnished the credits. The objection to the introduction of the account as contained in said book was then overruled, the book admitted, and the defendants excepted.

In deciding upon this point, whatever scruple we might entertain, if any, might justly and appropriately be deferred to what may be termed

the scarce definable evidence of personal inspection possessed by the circuit judge.   He had before him a book "belonging to the office" of the clerk of the county court, in which was stated an account between the county and one of its officers—the debit of which (it was sworn) was kept by another officer, (the clerk) the credits furnished (as supposed) by another officer, (the collector) and the whole "certified and approved" by the president of the court.   The balance stated to be due the county was $1528 38—reduced by credits and commissions to that sum from $2921 40½, the aggregate of the original indebtedness.   The official character of the book thus presented not being established, and credit consequently not asserted for it in the usual manner, did it carry with it, by other entries and by other tokens, a natural, honest, official appearance ?   Or was there anything thereby presented to the senses or the understanding of the judge, which should cause him to refuse to hear the account as therein stated read to him—reserving, of course, the ultimate discretion to declare, by instruction or otherwise, whether it should be rejected in toto, or go in with other cumulative evidence into the mass of the testimony ?   We think there was not, or at least we cannot say that there was.

The account having been thus read, the plaintiff next offered the resident tax list for 1840, shewing the amount of taxes due to be $1962 93 1-4, and the non-resident tax list for the same year amounting to $248 56 7-8, both sums corresponding precisely with the sums carried out to the same items in the court book which had been admitted as containing a statement account.   Both these tax books had been receipted for, and (as the clerk who was testifying supposed) returned by Fulkerson, the collector.

This being all the evidence material to the issue, the defendant asked the court (which sat also as a jury) to decide that—

1. The account read in evidence (from a book kept by order of the county court, and signed H. H. Wardlow, P. C.) is not evidence as against the securities of the amount of indebtedness stated as the balance of said accounts.

2. The minutes of the county court, as read in evidence from the record book at page 112, are not evidence as against the securities of the amount there charged as indebtedness.

3. If the court find for the plaintiff, the court will find and determine which of the breaches assigned in the declaration are truly assigned, and which not, and assess damages accordingly.

4. No damages can be assessed against the defendants, or any of them

unless it appears to the satisfaction of the court that the breaches, one or more of them, are true as assigned.

5. The court sitting as a jury cannot assess as against the securities in the bond more than the damages proved to be sustained by the county, and legal interest on the same from the time said damages accrued.

The court having given only the fourth of these instructions, its declension to give the others was excepted to, and is complained of here.

Premising that we are unable to distinguish any sufficient reason for establishing one degree of liability for the principal, and a different degree of liability for the securities in the same bond, and in the same suit, it is deemed sufficient to add to the opinion already intimated when remarking upon the original naked introduction of the court book in evidence, that the subsequent concurrence and support which was rendered to it by the introduction of the tax lists, which would of themselves have established a liability against the collector and his securities, even largely exceeding that established by the account, as "certified and approved" in the book, rendered it at least some evidence —perhaps the very best of which the case was then susceptible—of the exact amount of the collector's default. As this was the only real matter in question, and as by the evidence of the tax lists the securities were chargeable with a greater sum than the balance thus struck against them on the "book," there was nothing practical in the second instruction, and the court committed no error in refusing it, as well as the first one. Whilst a sufficient reason why the court refused to put the plaintiff to an election between what are alleged to be the contradictory counts in her declaration is recognized in the brief of the counsel for the State, it may be proper to remark in addition, that were it even otherwise, it being evident from the record before us that the verdict and judgment must necessarily be the same were the cause remanded and tried anew, as suggested in the matter complained of, the error, if one had even originally been committed, is no longer deemed sufficiently practical or operative to require the interposition of this court. From the whole record, therefore, we think the cause was well enough tried—that the issues were sufficiently formed, and that the judgment being a legal and proper one, should be, as it is, affirmed.