JOHN BRUCKER, Appellant, v. GEORGIA CASUALTY COMPANY, Macon, Georgia, Garnishee of STEVE GAMBARO and FRANK GRASSI.—32 S. W. (2d) 1088.

Court en Banc, November 25, 1930.

*Joseph Goodman* and *James J. O'Donohoe* for appellant.

*Holland, Lashly & Donnell* and *Robert A. Holland, Jr.,* for respondent.

WHITE, J.—The plaintiff, April 30, 1925, in the Circuit Court of the City of St. Louis, recovered judgment against the defendants Gambaro and Grassi for $10,000; the defendants appealed to this court, where the judgment was affirmed on condition that the plaintiffs remit $2,000. The *remittitur* was duly filed October 3, 1928. [Brucker v. Gambaro et al., 9 S. W. (2d) 918.] The appeal was without supersedeas bond.

October 30, 1925, the plaintiff caused execution to be issued on said judgment, and the Georgia Casualty Company was summoned to appear before the circuit court as garnishee. The plaintiff filed interrogatories, and among them were the questions whether at the

time of the service of the writ of garnishment on November 2, 1925, the garnishee was indebted in any manner to Steve Gambaro or Frank Grassi, and whether the garnishee was bound by any contract to pay the defendants or either of them any money which was not yet due.

The garnishee filed answer to the interrogatories, denying that it owed Frank Grassi or Steve Gambaro any money on the second day of November, 1925, or that it was bound by any contract to pay either of them any money, either due or not yet due. Further answering, garnishee alleged that, April 5, 1923, it issued to Steve Gambaro a policy of automobile insurance, which policy was in force from April 5, 1923, to April 5, 1924, set up the garnishee's construction of the terms and conditions of the said policy, and denied that garnishee was now under any obligation to pay Gambaro or Grassi, or either of them, any amount whatever.

The plaintiff thereupon filed a denial of the answer of the garnishee, in which he set forth the judgment above mentioned, alleging that the garnishee was indebted to Steve Gambaro and Frank Grassi, judgment debtors, in the sum of $10,000, the amount of the said judgment with interest from the date of judgment and costs. To the denial plaintiff attached a copy of the policy mentioned in the answer, covering liability, to the extent of $10,000, resulting from the operation of a Moon touring car, year model 1921, factory number 5996, with other items of identification. This policy sets forth that in consideration of a premium and the statements attached, the garnishee agreed to indemnify the insurer:

"(1) Against Loss arising or resulting from claims upon the Assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered while this Policy is in force, including death resulting at any time therefrom, by any person or persons, by reason of the ownership, maintenance or use of any of the automobiles as enumerated and described in the schedule."

The conditions of the policy are then stated:

"To Defend the Assured and Pay Expenses and Costs Subject to the following conditions."

Among those conditions are the following:

"Condition B. Upon the occurrence of an accident covered by this Policy the Assured shall give immediate written notice thereof to the Company at its Home Office in Macon, Georgia, or to its duly authorized agent. If any claim is made on account of such accident the Assured shall give like notice thereof. If any suit is brought to enforce such a claim the Assured shall immediately forward to the Company at its Home Office in Macon, Georgia, every summons or other process as soon as the same is served on him, and the Company shall defend such suit (whether groundless or not) in the name and on behalf of the Assured. All expenses (legal

and otherwise) incurred by the Company in defending such suit and all court costs assessed against the Assured shall be paid by the Company (whether the verdict is for or against the Assured) regardless of the limits of liability expressed in the Schedule. The Assured shall always give to the Company all co-operation and assistance possible. The Company shall have the right to settle any claim or suit at its own cost at any time.

"Condition C. The Assured, whenever requested by the Company, shall aid in securing information and evidence and the attendance of witnesses and in effecting settlements and in prosecuting appeals, but the Assured shall not voluntarily assume any liability, either before or after an accident, nor shall he (without the written consent of the Company previously given) incur any expense or settle any claim, except at his own cost, nor interfere in any negotiations for settlement or in any legal proceedings conducted by the Company on account of any claim; except that the Assured may provide at the time of the accident (and at the cost of the Company) such immediate surgical relief as is imperative.

"Condition D. No action shall be brought against the Company under or by reason of this Policy unless it shall be brought by and in the name of the Assured for a loss, defined hereunder, after final judgment has been rendered in a suit, described hereunder, and within one year from the date of such judgment, to-wit: for loss that the Assured has actually sustained by the Assured's payment in money—(a) of a final judgment rendered after a trial in a suit against the Assured for damagees; (b) of the expense (excluding any payment in settlement of a suit or judgment) incurred by the Assured in the defense of a suit against the Assured for damages. The Company does not prejudice by this condition any defense against such action that it may be entitled to make under this policy. . . .

"Condition G. In case of payment of loss or expense under this Policy, the Company shall be subrogated to all rights of the Assured against any party, as respects such loss or expense, to the amount of such payment, and the Assured shall execute all papers required and shall co-operate with the Company to secure to the Company such rights."

The denial then recited that on August 13, 1923, while plaintiff was rightfully walking on the sidewalk, the automobile mentioned, propelled by gasoline power and insured in said policy, was carelessly and negligently caused and permitted to drive on the sidewalk, and caused and permitted to come into violent contact with the plaintiff, throwing him against the said sidewalk and the wall of a building which was located at said point, as a direct result of which he sustained injuries for which he brought the suit mentioned. That the said Steve Gambaro owned and maintained the automobile

insured under said policy aforesaid, and at the time the plaintiff sustained his injuries, said Frank Grassi was riding in said automobile, operating the same for the pleasure of Steve Gambaro and his family.

The answer of the garnishee and the denial of the plaintiff stated at length the theory of each in regard to the effect of the policy and its construction with reference to the matter under consideration.

The garnishee, on March 31, 1927, filed an amended demurrer to the plaintiff's denial above mentioned, and thereafter on April 6, 1927, the Circuit Court of the City of St. Louis sustained that demurrer. The plaintiff declined to plead further, and the court, April 6, 1927, entered judgment in favor of the garnishee against the plaintiff, who appealed to this court in due form.

I. The respondent based its defense in the trial court and its demand to have the judgment affirmed here on  what is termed the "no-action clause" in the policy, set out above, which contains the following:

"Condition D. No action shall be brought against the Company under or by reason of this Policy unless it shall be brought by and in the name of the Assured for a loss, defined hereunder, after final judgment has been rendered in a suit, described hereunder, and within one year from the date of such judgment, to-wit: For loss that the Assured has actually sustained by the Assured's payment in money."

The theory of the respondent and evidently of the circuit judge was that by Condition D the policy is one of insurance against loss, that the term "loss" means money actually paid by the assured, and that no action by another than the assured, such as garnishment, lies. Respondent relies principally upon State ex rel. Automobile Insurance Company v. Trimble, 297 Mo. 659, and cases cited from the Kansas City Court of Appeals and the Springfield Court of Appeals. Plaintiff construes the policy by certain other conditions to be one of insurance against liability.

Condition B, set out above, provides that upon the occurrence of an accident covered by the policy, the assured shall give immediate notice to the company, and that the company shall defend at its own expense all suits brought against the assured on that account; that the assured should always give the company all co-operation and assistance possible, and the company shall have the right to settle any such claim or suit. That the assured should not voluntarily assume any liability, either before or after an accident, nor incur any expense nor settle any claim, except at his own cost, nor inter-

fere in any negotiations for settlement or in any legal proceedings conducted by the company on account of any claim.

The denial sets up that the garnishee did defend the suit above mentioned on behalf of Gambaro and Grassi, supplied counsel, took full charge of the defense, and refused to permit defendants, or either of them, to compromise or settle said suit, although they could have settled said damage for less than the judgment obtained.

Under conditions of this kind in an indemnity policy, where the insurer takes exclusive charge and management of such a suit, the policy is usually construed as one against liability, notwithstanding the no-action clause. [State ex rel. v. Daues, 13 S. W. (2d) 1059; Goerss v. Indemnity Co., 3 S. W. (2d) 272; Griffin v. General Casualty & Surety Co., 231 Mich. 642; Myers, by Next Friend, v. Gardner & Casualty Co., Garnishee, 103 Kan. 118, L. R. A. 1918 E, 541; Elliott v. Belt Automobile Assn., 87 Fla. 545; American Indemnity Co. v. Fellbaum, 114 Tex. 127; Patterson v. Adan, 119 Minn. 308, 48 L. R. A. (N. S.) 184; Sanders v. Frankfort Marine Ins. Co., 72 N. H. 485; Hoven v. Employers' Liability Assur. Corp., 93 Wis. 201; Clark v. Bonsal, 157 N. C. 270; Davies v. Maryland Cas. Co., L. R. A. 1916 D, 395 (Wash.); 4 Joyce on Insurance (2 Ed.) 4812, 4813.]

In Davies v. Maryland Casualty Company, supra, the court said, l. c. 397:

"When an accident occurs, he (insurer) hurries to protect the assured and himself from liability by defeating the claimant in advance. But, when the claimant has been successful, the insurer, falling back on the other theory, argues that he is not a liability insurer, only a reimbursement insurer. This shifting subjects him to the familiar doctrine of estoppel by election in inconsistent positions. The law does permit him to have the exemptions of a reimbursement engagement, but he cannot have the benefits of a liability engagement at the same time. . . . When he takes over the defense himself, he will not be heard to say that he has not assumed the position of a liability insurer. Accordingly we hold that, by conducting the defense, the employer's insurer waived the right to exact prepayment by the assured, and that on the final judgment of Davies against the coal company 'loss' matured."

In Myers, by Next Friend, v. Gardner & Casualty Company, 103 Kan. 118, L. R. A. 1918 E, 541, there was such a no-action clause, and a clause similar to Clause B in this policy. The court said, l. c. 544: "Instead of being exempt from liability until prepayment of claims by the insured, the insurer practically puts itself into the place of the insured, so far as settlements with employees and payment of their claims are concerned." Yet Kansas is mentioned by respondent as one of the states that supports his theory.

In Goerss v. Indemnity Company, 3 S. W. (2d) 272, the St. Louis Court of Appeals had under consideration a contract very

similar to this, and held that the insurance was one against liability, notwithstanding the no-action clause. A writ of certiorari was granted by this court that we might review that case, State ex rel. v. Daues, 321 Mo. 1035, 13 S. W. (2d) 1059, and the writ was quashed, because the ruling of the Court of Appeals was not in conflict with State ex rel. Western Automobile Insurance Company v. Trimble, 297 Mo. 695. We pointed out the distinction and used this language, l. c. 1061:

"It must be held that, if relator intended to contract only against loss, it could easily have done so by the use of plain and unambiguous words. That it did not do so is made apparent by relator's effort to explain the meaning of the words. . . . In addition, the files of this court and the Western Auto case disclose that the company did not agreed to defend suits, but it was agreed that it 'may' do so."

The distinction between the two cases is in the very terms of the policy. The comments of this court point out clearly that distinction. The distinction is just as clear between the present case, and the Western Auto case, which is therefore not in point here.

Under the contract in this case, the insurer was not merely at liberty to defend the suit, but it must do so. It was a part of its contract to defend the assured against liability. It undertook to defend any suit. It could not in accordance with that agreement cease that defense when the case was lost. The protection did not stop with the conduct of the suit. It can only stop when a judgment against the assured is satisfied. The garnishee by refusing to pay the judgment rendered against the assured fails to comply with its contract. [Reilly v. Linden, 151 Minn. 1, a garnishment case.]

The assured under Condition B, if construed literally, is not allowed to settle the judgment against him for less than its face, nor settle at all, yet under Condition D he must pay it before he can sue. On respondent's theory, it has stipulated itself free from any liability on its contract.

A well-established principle of law is that the interpretation by the parties of the terms of their contract, and the manner in which they act upon it, is persuasive as to its meaning. The no-action clause is entirely inconsistent with the provision for the management of the defense by the insurer, and the parties having acted upon the theory that this was an indemnity against liability, the insurer is bound by it.

The assured is not protected against loss if he is solvent and has to pay a judgment before he can recover against the insurer. A judgment impairs his credit. It might be sufficient to render him insolvent or drive him out of business. His loss is the liability incurred when he has judgment rendered against him,

II. There is another reason why the garnishment proceeding in this case is sound. Condition D in the policy provides that no action shall be brought except in the name of the assured after final judgment and after the assured has paid the judgment, and the suit must be brought within one year. That is in direct conflict with Section 2166, Revised Statutes 1919, because it attempts to limit the period in which an action may be brought, contrary to our Statute of Limitations. If the assured should assign his claim, the assignee could not sue on it, although he paid full value for it and his title were perfect; the assured could not sue on it because under Section 1155, Revised Statutes 1919, every suit must be brought in the name of the real party in interest. In that case to enforce a perfect right, nobody could sue.

If the assured should die before his claim for loss were paid, his administrator or executor could not sue for this just debt due the deceased's estate, nor could a purchaser at an administrator's sale. Thus the no-action clause attempts to say that certain persons who have perfect causes of action cannot sue in the courts to enforce them.

This is contrary to the principal that no contract which attempts to oust the courts of jurisdiction can be enforced. It is held that any stipulation between parties to a contract distinguishing between different courts is contrary to public policy. The principle is applied to a stipulation in a contract that a party who breaks it may not be sued, and an agreement designating a person to be sued for its breach who is in nowise liable, and prohibiting action against any but him. Such an agreement tends to oust the courts of jurisdiction. [13 C. J. 455, 456; Reichard v. Manhattan Life Ins. Co., 31 Mo. 518; First Nat. Bank v. White, 220 Mo. 717, l. c. 737; State ex rel. Harbis v. Trimble, 292 Mo. 333, l. c. 340; Kent v. Universal Film Mfg. Co., 193 N. Y. Supp. 838, l. c. 845; Steinhardt v. Con. Grocery Co., 80 Fla. 531; San Francisco Securities Corp. v. Phoenix Motor Co. (Ariz.), 220 Pac. 229; Coleman v. Magnolia Provision Co., 287 S. W. (Tex.) 294, l. c. 297; Long v. Chronicle Pub. Co., 228 Pac. 873; Sudbury v. Ambi Verwaltung, 210 N. Y. Supp. 164; Sliosberg v. New York Life Ins. Co., 217 N. Y. Supp. 226; Johnson v. Royal Motor Co., 226 Ill. App. 147; General Motors Acceptance Corp. v. Talbott, 38 Idaho, 13.]

In the Reichard case, 31 Mo. 518, the assured in his contract waived the right to bring a suit upon the policy except in the courts of the state incorporating the company. It was held to be void in ousting the courts of this State of jurisdiction. If the agreement by the assured not to bring suit in this State is contrary to public

policy, then a contract by the assured that anyone who may acquire his rights under the contract cannot bring suit anywhere, is an attempt to oust the courts of this State of jurisdiction. The Reichard case is cited with approval in First Nat. Bank v. White, 220 Mo. 1. c. 737, and in State ex rel. Harbis v. Trimble, 292 Mo. 1. c. 340.

In the Coleman case, 287 S. W. 1. c. 296, it was said:

"There is no doubt the general rule is that stipulations in a contract intended to deprive the courts of power to determine the substantive rights of parties thereto are contrary to public policy and therefore unenforceable."

Here the plaintiff has a substantive right. Our statutes relate to garnishment and provide a method by which he could proceed to enforce his right. The garnishment statute is as clear in defining the right and remedy of a creditor against the debtor of his debtor as any statute, and yet this contract attempts to prevent the enforcement of that right by that remedy.

In the Steinhardt case, supra, it was held that an agreement to settle by arbitration tended to oust the courts of jurisdiction since it did not provide for a proceeding to enforce the result.

In the Arizona case, 220 Pac. 1. c. 230, the contract provided that in the event of an assignment of the seller's interest in the personal property, then the purchaser should be precluded from in any manner attacking the validity of the contract on the grounds of fraud, duress, mistake or want of consideration. It was held that that provision was contrary to public policy and void as tending to oust the courts of jurisdiction. There was a statute of Arizona, however, providing that in case of an assignment of a thing in action, the action by the assignee should be without prejudice to any set-off or other defense existing before the assignment. However, that statute seemed to be unnecessary, for it states a rule of common law at least as it prevails in this State.

In the Illinois case, 226 Ill. App. 147, the court said, 1. c. 149: "The policy further provides that in the event of litigation no suit or other proceeding at law or in equity shall in any event be begun or maintained for the recovery of any claim upon or by virtue of the contract in any court other than the highest court of original jurisdiction." The suit was begun before a justice of the peace. The court then added: "It is sufficient to say that such a provision is void as against public policy."

What is the difference in principle between saying that suit shall not be had in a court which has jurisdiction and saying a certain party who has a just right shall not sue in any court, as in this case? In the Sudbury case, 210 N. Y. Supp. 1. c. 165, this was in the contract: "For the decision of such disputes (as might arise on a contract), exclusive jurisdiction is vested in German courts,

namely, the superior court." It was held that it tended to oust the courts of jurisdiction.

In the California case, 228 Pac. 873, a newspaper subscription contest provided that the management would have final decision of the disputed question, and also the contest should be under the supervision of the judges from an advisory board. It was held that such decisions could not bind the contestant. It tended to oust the court of jurisdiction. The court said, l. c. 876: "It certainly cannot be lawful for one party to a contract, even by express terms thereof, to provide, in advance of any controversy growing out of the contract, that his judgment of the law regarding any question which may arise shall preclude the other party to the contract from contesting the same in a court of law or equity."

In this case the garnishee is liable to the defendant under the terms of its contract as an insurer against liability. There can be no denial of the garnishee's liability to the assured on account of the judgment which was obtained, notwithstanding the insurer's defense. The garnishee owes the defendant the amount of that judgment as affirmed in this court, unless the garnishee has some defense not apparent in the record. The plaintiff is the owner of that judgment. The statute provides a method by which he may enforce it. The garnishee interprets a stipulation in the contract to say that he cannot pursue that statutory method. That interpretation denies to the plaintiff the right to go into court in the manner which the statute expressly provides for him. So that part of the Condition D', that no one shall sue except the assured, is contrary to the statute, which says that "all debtors of the defendant" in execution shall be subject to garnishment. [Art. V, ch. 13, R. S. 1919.]

The judgment is reversed and the cause remanded with directions to proceed in accordance with the views expressed in this opinion. *Walker, J.,* concurs; *Blair, P. J.,* dissents.

PER CURIAM:—The foregoing opinion of WHITE, J., delivered in Division Two, is adopted as the opinion of Court en Banc. All concur, except *Blair, J.,* who dissents.