PEARL LAJOIE, RESPONDENT, v. CENTRAL WEST CASUALTY COMPANY, GARNISHEE, APPELLANT.—71 S. W. (2d) 803.

Kansas City Court of Appeals.   April 2, 1934.

*A. J. Bielby, Melvin J. Duvall* and *J. W. Boyd* for respondent.

*Landis & Landis* for appellant.

REYNOLDS, C.—This is a proceeding by garnishment under execution upon a judgment rendered in favor of Pearl Lajoie and against Tony Rossi in the Circuit Court of Buchanan County, March 10, 1930, for the sum of $8,700, in an action wherein the respondent herein, Pearl Lajoie, was plaintiff and Mike Rossi and Tony Rossi were defendants. The garnishee, the appellant herein, is the garnishee of said defendant Tony Rossi and is now and was, at the time said judgment was rendered and at all times since, an insurance company engaged in liability or indemnity insurance in the State of Missouri, for which it was duly authorized.

On the —— day of August, 1931, Pearl Lajoie, respondent herein, caused to have issued by the circuit clerk of Buchanan County an execution upon the judgment had by her against the said Tony Rossi and caused the appellant herein, the Central West Casualty Company of Detroit, Michigan, to be summoned as garnishee of said Tony Rossi and to answer plaintiff's interrogatories. On the sixth day of October, 1931, thereafter, plaintiff filed its interrogatories to said garnishment in the Circuit Court of Buchanan County, aforesaid, in the manner and form and within the time provided by law, touching its indebtedness to the said Tony Rossi, the defendant in said execution, at the time of the service of the garnishment or since such service or now, and touching any contract by which, at the time of the service of the garnishment or since then or now, it was bound to said defendant in said execution to pay him any money now or yet to become due and also respecting its custody or control of any money or properties, credits, or effects belonging to defendant at such times.

Thereafter, on the tenth day of October, 1931, the appellant herein,

as garnishee, filed in said Buchanan County Circuit Court its verified answer to said interrogatories, by which it denied that it was, at the time the garnishment was served upon it, bound by any contract to pay said defendant Tony Rossi any money now due or to become due and that it had not, since said garnishment was served upon it or now, become so bound and denied that, at the time of the service of the garnishment, it had in its possession, control, or custody any money or other property, credits or effects belonging to said defendant or that, now or since said garnishment, it has or has had possession, care, or custody of any such for said defendant and denied that it is now or was or had been, at any of such times, indebted to said defendant Tony Rossi.

Thereafter, on the fifteenth day of October, 1931, the plaintiff filed her denial of said garnishee's answer to said interrogatories, alleging therein the corporate capacity of garnishee and that it was duly organized as such corporation and was lawfully engaged in the insurance business in Missouri and tendering first a general denial to said answer which was followed by a further denial setting up, among other things, that, at the time of the service of the writ of garnishment upon the garnishee, to-wit, on the —— day of August, 1931, garnishee was indebted to Tony Rossi, the defendant and judgment debtor herein, in the sum of $8,700 with interest thereon at the rate of six per cent per annum from the tenth day of March, 1930, and for the sum of $60 court costs assessed in a certain damage suit wherein she, the respondent herein, was plaintiff therein against one Mike Rossi and the said Tony Rossi and wherein she had recovered judgment against the said Tony Rossi for the sum of $8,700 with interest and costs for damages for injuries occasioned her by the said Tony Rossi while legally operating a certain motor car described in a certain policy of insurance number 12420744 which had been issued and delivered by garnishee at St. Joseph, Missouri, about the twenty-eighth day of March, 1929, to one Mike Rossi as the named assured therein and for costs of said suit, by which said policy and by the various provisions thereof and of the endorsements thereon or attached thereto it insured not only the said named assured against liability for loss incurred on account of damages for injuries occasioned to other persons in the operation of said motor car, so described therein, as a result of the ownership, maintenance, or use thereof, but also the defendant Tony Rossi, as one of the assureds thereunder when riding in or legally operating said car with the permission of the said Mike Rossi, against liability for loss incurred on account of damages for injuries occasioned to other persons in the use and operation of said car and by further reason of the fact that said Tony Rossi had, while legally using and operating said car with the permission of said Mike Rossi, the named assured, incurred liability for loss on account of damages for injuries occasioned the plaintiff in colliding said car with another car in which she was at

the time seated, for which injuries she had obtained judgment aforesaid against him in the sum of $8700 and, for the payment of which sum to the said Tony Rossi, the liability of the garnishee had become fixed and final as his debtor.

It was further alleged in said denial that the garnishee had breached the terms of said contract in failing to attempt to adjust and settle plaintiff's claim against him in said suit, in which she obtained the judgment aforesaid, and in failing to appear for him and defend him in said suit and that, by reason thereof, it had become liable to him.

It further alleged the insolvency of the defendant Tony Rossi.

It further set out the various provisions of said policy of insurance, upon the proper construction of which this controversy might depend, together with plaintiff's theory of such construction to be given and the effect of such provisions to follow therefrom with respect to the determination of the matters involved.

Thereafter, on the twenty-seventh day of November, 1931, garnishee filed its motion to quash the writ of garnishment and all proceedings against garnishee thereunder, which, on the fourteenth day of March thereafter, was by the court overruled. Thereupon, on the fourteenth day of March, 1932, garnishee filed a demurrer to plaintiff's denial which was, upon the same date, considered and overruled by the court. Thereafter, on the sixth day of June, 1932, the cause was ordered transferred to the Circuit Court of Caldwell County upon garnishee's application for a change of venue; and, thereafter, on the twenty-eighth day of June, 1932, in the Circuit Court of Caldwell County, the garnishee filed an amended reply to plaintiff's denial of its answer to plaintiff's interrogatories, which amended reply denied generally each and every allegation in said denial contained. Garnishee, by said amended reply, admitted its corporate capacity and alleged that it was engaged in the indemnity and casualty insurance business in Missouri and elsewhere and, in effect, admitted the issuance by it of a certain policy of insurance number 12420744 of date March 28, 1928, to one Mike Rossi but alleged that it insured him—the said Mike Rossi—only against liability for loss imposed by law upon him arising out of the ownership, maintenance, and use of a certain Ford coupe model 1927 motor car, motor number 14695902, for a period of one year and that said policy also extended only for the benefit of other persons legally operating such car with the permission of the said Mike Rossi and only when operating with such permission and that, by a rider attached to said policy of date June 6, 1929, said policy ceased to cover said Ford coupe model 1927 and was thereafter made to cover liability of the said Mike Rossi for damages as a result of the ownership, maintenance, and use by him of a certain Ford roadster, car model A 1929, motor number A-1636957, and also the liability of other persons legally operating said car with his permission and that all other terms, conditions, agreements, and

limitations of said policy remained in full force as originally provided and were in no wise varied, waived, or extended by said rider. Such amended reply, further, in effect, denied that, at the time of the injuries to plaintiff by the defendant Tony Rossi in the operation of the Ford roadster Model A 1929, the said Mike Rossi was the owner of said car and that the said Tony Rossi was operating it with the permission of said Mike Rossi within the contemplation of said policy but alleged that, at such time, said Tony Rossi was the owner of said car and was operating the same as such in his own right and that he was not operating the same while upon an errand for the said Mike Rossi or upon business for him or while in his service and that, therefore, the liability for loss incurred by the said Tony Rossi for damages on account of the injuries to the plaintiff by his operation of said car was not a matter insured against by the policy in question and such liability on the part of the said Tony Rossi is and was not covered by said policy and that the garnishee is not, by reason thereof, in any wise indebted to said Tony Rossi for the payment of any money or, in any manner, thereby bound to him for the payment of money and that, in no event, could the liability of the garnishee, under the policy issued, be in excess of the sum of $5,000 and interest and cost of suit.

Such amended reply further set up that the said Tony Rossi was in no wise damaged by the fact that the garnishee had failed to investigate the claim made by plaintiff against him for damages on account of her said injuries for the reason that it notified defendant Tony Rossi that it was not bound to defend him in the litigation involved in said claim or to pay any judgment rendered against him in such litigation and that, as a result thereof, the said Tony Rossi thereupon employed counsel who did investigate and skillfully defend the cause against him and that he was not thereby, in any way, damaged or caused to suffer loss by reason of not having been represented in said defense by the garnishee herein and that the loss claimed to have been sustained by him by reason of such failure to defend him is speculative and unliquidated and not the subject of an action in garnishment.

By such amended reply, the garnishee further set up that the proceedings herein were without the authority of law; that the proceeding by garnishment in matters of the nature involved herein formerly existing had been supplanted by a statutory proceeding in equity against defendant and garnishee, which statutory proceeding in equity is now exclusive. Such amended reply of garnishee stated at length the theory of the garnishee in regard to the construction to be given the various provisions of said policy and the effect of such provisions, when so construed, with respect to a determination of the matters involved herein.

Further facts appear from the evidence as follows: On March 12,

1929, one Mike Rossi was the owner of a model T. Ford motor car; and, on such date, the Central West Casualty Company of Detroit, Michigan, the garnishee herein, issued to him a policy of insurance insuring him against loss from liability imposed by law upon him for damages as the result of the ownership, maintenance, and use of said automobile. Afterwards, while said policy was in force, Mike Rossi disposed of the model T. Ford; and Tony Rossi, his adult son living with him, became the owner of a model A Ford; and, thereupon, the garnishee was notified of such fact by Tony Rossi and requested to change the policy to cover the Ford roadster, model A. The garnishee, thereupon, issued and mailed to defendant Tony Rossi a paper slip designated ''Automobile Substitution'' and directed that the same be attached to the policy, which was done as directed. Such automobile substitution slip, among other things, provided ''Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned Policy other than as above stated.'' It does not appear that anything was ''above stated'' in such ''Automobile Substitution'' slip other than ''In consideration of the premium adjustment shown herein, it is hereby understood and agreed that the Policy shall cease to cover the following-described automobiles;—Ford 14695902 Coupe 1927 Gasoline, and shall cover the following-described automobiles;—Ford Model 'A' A-1636957 Roadster 1929 Gasoline.''

The original policy provided that: ''Central West Casualty Company, Detroit, Michigan. (Herein Called The Company) In Consideration of the payment of the premium and the Statements forming a part hereof, Does Hereby, in respect to any automobile (s) described herein, Insure the Assured against loss for liability imposed by law upon the Assured for damages as a result of the ownership, maintenance or use of such automobile (s) within the United States and Canada:'' It was further provided in said policy by a clause therein denominated ''Omnibus Coverage'' as follows: ''To Extend the Benefits of this policy subject to its Conditions, Limitations and Agreements to any person or persons while riding in or legally operating such automobile(s) and to any person, firm or corporation (excepting a public garage, automobile repair shop, automobile sales agency or service station, and agents or employees thereof) legally responsible for the operation thereof, provided such use or operation is with the permission of the Named Assured; or, if the Named Assured is an individual, with the permission of an adult member of the Named Assured's household other than a chauffeur or a domestic servant. In no event shall the extension of this insurance cover the purchaser of such automobile(s) or the transferee or assignee of this policy, excepting with the direct consent of the Company given in the manner provided in paragraph numbered 11 hereof —''

Paragraph number 11 of the policy, above referred to, is as follows: "Any assignment or transfer of interest hereunder, whether voluntary or otherwise, shall immediately terminate this policy, unless such assignment is consented to by endorsement signed by an officer of the Company."

It further appears that, upon the request of the defendant Tony Rossi to have the policy of insurance changed from Ford coupe 1927 numbered 14695902, owned by Mike Rossi, so as to make it apply to and cover model A Ford 1929 number A-1636957 owned by Tony Rossi, the garnishee delivered the "Automobile Substitution" slip above mentioned and directed that it be pasted on the policy under a heading "Paste Endorsements Here;" and the same was thereupon pasted upon said policy under said heading.

At the time of such request for said change in the policy and at the time garnishee executed the substitution slip and directed it to be endorsed and pasted upon said policy, consenting to said assignment and transfer, it was notified of the fact that Tony Rossi was the owner of the Ford roadster 1929 model A being substituted for the Ford model of 1927 and that the said Mike Rossi was not, at such time, the owner thereof.

By the terms of said policy, the insurer engaged that its liability extended against liability for loss imposed upon the assured by law in case of and for bodily injuries, including death at any time resulting from such bodily injuries accidentally suffered or alleged to have been suffered by any person or persons.

It was further provided by said policy that the term "Assured" should include the "Named Assured" and any person, firm, or corporation included in the "Omnibus Coverage" clause; but the term "Named Assured" should apply only to the person, firm, or corporation named in the statements. It would appear from the policy and from the statements therein that Mike Rossi was the only "Named Assured" therein.

It was further provided by the terms of said policy that the insolvency or bankruptcy of the assured should not relieve the company from any payment otherwise due thereunder; and, in case execution against the assured should be returned unsatisfied because of such insolvency or bankruptcy, the judgment creditor should have a right of action against the company, under the terms of the policy, to recover the judgment in said action, not exceeding the limits specified in the policy. It was further provided by said policy that the company's liability for any injury or death accidentally suffered or alleged to have been suffered by any person or persons should not exceed the sum of $5,000 on account of injury to or death of any one person and, subject to the same limit on any one person, its total liability on account of any one accident resulting in bodily injuries or death to more than one person should not exceed $10,000, unless

increased limits, in consideration of additional premiums, should be specified in its statements. No such increased limits appear to have been provided for in its statements referred to and forming part of the policy.

By the terms of said policy, the garnishee company further agreed to investigate all accidents covered by the policy and to defend in the name and in behalf of the assured any claim or suit covered by the policy brought against the assured, whether groundless or not, for damages suffered or alleged to have been suffered on account of bodily injuries or death or property damage and to pay all costs taxed against the assured and any suit for damages covered thereby and defended by the company and to pay interest accruing after entry of any judgment not in excess of the limits of the liability of the company.

It was further provided by the terms of the policy that it should be in force beginning at noon on March 28, 1929, and until noon on March 28, 1930, standard time, and that, during the period of the policy, the automobile(s) described therein should be used only for pleasure, private, family, and business purposes.

It appears that, on the fourth day of October, 1929, during the life of said policy and after the substitution clause above mentioned was endorsed and pasted thereon, Tony Rossi, while operating the model A described in said substitution clause, accidentally injured the plaintiff by colliding with a car in which the plaintiff was at the time; that said Tony Rossi was, at said time, operating said car upon the direction of said Mike Rossi and was upon an errand for him; that, thereafter, at the January term of the Circuit Court of Buchanan County, Missouri, before the Honorable L. A. Vories, judge of said court in division number two thereof, plaintiff recovered judgment against the said Tony Rossi in the sum of $8,700, on account of the injuries so occasioned her by the said Tony Rossi, in an action wherein she was plaintiff and the said Tony Rossi and his father, the said Mike Rossi, were defendants.

Thereafter, on the eleventh day of August, 1931, respondent Pearl Lajoie caused execution to be issued against the said Tony Rossi upon the judgment so obtained by her as aforesaid, which execution appears to have been returned by Ben Prenger, Sheriff of Cole County, Missouri, as having been executed in Cole County, Missouri, August 17, 1931, by failing to find any goods, chattels, or real estate belonging to said Tony Rossi in Cole County, Missouri, and by delivering a true copy of a summons to the garnishee to Joseph F. Holland, deputy superintendent of the insurance department of Missouri, a duly authorized person to accept service for the garnishee insurance company, and by declaring that all money, debts, and evidence of debts in the hands of said insurance company were attached and seized. It further appears that notice of date August 17, 1931, was

given garnishee notifying it of the attachment of all debts due from it to Tony Rossi and to appear and answer interrogatories at the October, 1931, term of the court. Said notice bearing the return of Ben Prenger, Sheriff of Cole County, showed that said notice of garnishment was served upon the garnishee by him by delivering a copy thereof to Joseph F. Holland, deputy superintendent of insurance for the State of Missouri.

It further appears, from the record herein, that the garnishee did not undertake to investigate, settle, or adjust the claim of plaintiff for damages against Tony Rossi, which was the basis of the suit on which plaintiff obtained the judgment against him, nor did it appear for or defend the defendant Tony Rossi in the suit brought by respondent Pearl Lajoie against him and his father but refused so to do and appeared for the father only and that, in said cause, plaintiff failed to recover judgment against said Mike Rossi but recovered judgment against Tony Rossi only.

Thereafter, on the twenty-eighth day of June, 1932, during the June term, 1932, of the Circuit Court of Caldwell County, the cause was tried before the regular judge of said court and a jury. The jury returned a verdict for the plaintiff and against the garnishee, the appellant herein, finding the issues for the plaintiff and that, at the time of the service of the writ of garnishment on the seventeenth day of August, 1931, garnishee was indebted to the defendant Tony Rossi in the sum of $5,000 with interest thereon at the rate of six per cent per annum from the tenth day of March, 1930. The amount of such interest was not stated or included in the verdict. An interlocutory judgment was rendered upon the verdict on June 28, 1932, in accordance therewith in the sum of $5,000 with interest from March 10, 1930, at six per cent per annum (a statement of the amount of the interest being omitted); and garnishee was by the court, on said date, ordered to pay said sum into the court on or before the twenty-eighth day of July, 1932, and, upon such payment, be discharged. It was further ordered that plaintiff recovered from garnishee her costs.

Thereafter, on the twenty-third day of August, 1932, during the June term, 1932, of the court, the final judgment of the court was rendered, which judgment is as follows:

"It having been heretofore, on the 28th day of June, 1932, ordered, adjudged and decreed that the garnishee herein, Central West Casualty Company, of Detroit, Michigan, pay over and deliver into court on or before the 28th day of July, 1932, the sum of $5,000, with interest thereon from the 10th day of March, 1930, at the rate of six per centum per annum, pursuant to the verdict of the jury, and it appearing to the court that said amount has not been paid, that said garnishee has defaulted therein, and that the garnishee has refused and still refuses to pay the same pursuant to said order.

"It is ordered, adjudged and decreed that plaintiff have judgment against said garnishee for the said sum of $5,000 with interest thereon from the 10th day of March, 1930, at the rate of six per centum per annum and amounting in the aggregate to the sum of $5,735.79, and for the costs accrued upon the issues joined between the plaintiff and garnishee, and that execution issue against said garnishee to recover the amount due under this judgment."

Upon the rendition of said final judgment, garnishee, on said twenty-third day of August, 1932, filed its motions for a new trial and in arrest of judgment; both said motions, together with the motion for a new trial filed June 28, 1932, against the interlocutory judgment, were by the court overruled; and garnishee thereupon procured an order of the court allowing an appeal by it to this court.

## OPINION.

1—The appellant contends upon this appeal, first, that the procedure by garnishment prosecuted herein by respondent has been abolished by Sections 5898 and 5899, Revised Statutes 1929, and is no longer available—that is, without authority of law—and therefore cannot be sustained and respondent must fail in such procedure. Such contention appears to be based upon a construction shown to be given said sections by appellant, by which they must be held in all cases under contracts of casualty insurance, occasioned by loss on account of bodily injury or death or damage to property when payment of such loss is involved, to have so changed the relation of debtor and creditor existing between the insurer in such contracts and the assured thereunder that such relation necessary to support a garnishment proceeding no longer exists but is destroyed. Second, appellant contends that such sections created new rights and prescribed a new remedy in equity which became exclusive of all other and previous remedies afforded by the law for the enforcement of the payment of the insurer to the assured of such losses and damages existing at common law or provided by statute, including the process by garnishment prior to their enactment.

2—The right given by our statutes to enforce the payment of a judgment by reaching and applying to the satisfaction thereof, through execution and garnishment, and indebtedness found to be due the judgment defendant in the hands of third parties has existed for many years; and the statutes providing such right have been continuously brought forward in each revision of our laws for many years. [Revised Statutes 1919, Sections 1603 and 1846; Revised Statutes 1929, Sections 1152 and 1396.] At the outset, it is unreasonable to suppose that the legislative body would undertake to abrogate or repeal such right given by the statutes last above cited and others or to graft upon such statutes an exception to such right and process in certain cases by mere, doubtful inferences to that effect.

3—It is contended by the appellant that the Act of 1925, embracing Sections 5898 and 5899 as they now appear in the Revision of 1929, created and conferred new rights and prescribed the remedy to be used in enforcing such rights and that such remedy is, therefore, to be followed exclusively and that thereby the right to proceed longer by execution and garnishment under the general law is abrogated and supplanted in all cases arising under such act. It is true that, where a new right or the means of acquiring it is conferred and an adequate remedy is given by the same statute conferring the right, the proceedings under such statute are governed by its provisions and the remedy thereby afforded becomes exclusive. [Young v. Kansas City, St. Joseph & C. B. Ry. Co., 33 Mo. App. 509, l. c. 514; Hickman v. The City of Kansas, 120 Mo. 110, 25 S. W. 223; Ackerman v. Green, 201 Mo. 231, l. c. 244, 100 S. W. 30.]

However, situations where the remedies may be said to be merely cumulative or supplemental, as where there is a legal remedy by one statute and an equitable by another or at common law, are usually controlled by pertinent doctrines and rules distinctly applicable thereto. [Chandler v. Chicago & A. R. Co., 251 Mo. 592, l. c. 600, 158 S. W. 35.]

4—The act in question was under review by the Supreme Court of Missouri in the case of Schott v. Continental Automobile Insurance Company, 31 S. W. (2d) 7; and the object of the Legislature in the passage of such act was found to be to remedy mischiefs arising from the situation existing with reference to the insurer under casualty contracts answering for the liability of the assured by compelling payment by the insurer whether the assured had paid his liability or not and to regulate the proceedings for such compulsory payment by the assured provided therein. It was there said:

"It has long been the custom of many companies writing policies of casualty insurance to insert in their contracts a provision similar to the one in the contract involved in this case, namely: 'If loss be sustained . . . under this policy, it (suit) shall only be brought by the assured for reimbursement for the amount of the loss actually incurred, and paid in money by the assured, after trial of the issues.'

"In State ex rel. Western Automobile Insurance Co. v. Trimble, 297 Mo. 659, 249 S. W. 902, we were called upon to construe such a provision, and in that case, although the insured had suffered judgment on account of a casualty covered by his policy, and had obtained satisfaction of record of the judgment by executing solvent notes for the amount to the judgment creditor, we felt compelled to hold that he had no cause of action against the insurer until he had actually paid the judgment in money.

"In Goerss v. Indemnity Co., 3 S. W. (2d) 272, 274, the St. Louis Court of Appeals reviewed at length decisions showing a studied

effort of the courts everywhere, 'in pursuit of manifest justice, by one process of reasoning or another, to compel the insurer to answer for the insured's liability, whether the insured had paid his liability or not.' Among others, it quoted from Davies v. Maryland Casualty Co., 89 Wash. 571, 154 Pac. 1116, 155 Pac. 1035, L. R. A. 1916D, 395, 398, as follows:

" 'The Davies claim against the coal company was long resisted by the casualty company. To reimburse for such a claim, when established by judgment and paid, was the purpose of its contract. The judgment has established that claim. Nothing remains except a form. The casualty company in effect says to Mrs. Davies that, if the coal company will pay her at one end of the desk, the casualty company will repay the coal company at the other end. Not one thing, besides, does it argue, is wanting to its liability except this formula. On that process it insists, not because when the coal company shall have first paid and the casualty company shall then have given reimbursement there will result to it a right, claim, or even a salvage interest against the coal company or its assets, but because it wishes the thing done in just that way. It will pay a moment after, not a moment before, the coal company pays. If the latter will but get a loan for a few moments from some one else and pay the judgment, then the casualty company will hand it a check, perhaps long previously prepared.'

"It has not infrequently happened that an involvent insurer, after incurring liability, effected a collusive settlement with the insurer and canceled his policy in order to thwart the collection of a judgment against him through garnishment of the insurance company.

"The mischief which the Legislature had in mind is obvious; to remedy that mischief it passed and act to regulate the payment under contracts of casualty insurance.

" (5)  An analysis of the act discloses that it regulates the payment in three particulars:  (1)  It prescribes the time when the payment shall be made, (2) the person to whom it shall be made, and (3) the manner in which it may be enforced. With respect to the first it accelerates the payment: The insurer may not defer payment until after a judgment against the insured has been paid by the latter in money; the obligation on the part of the insurer to pay accrues the moment judgment against the insured has been rendered. As to the second, the act provides that upon the recovery of a final judgment against the insured, the insurance money shall be applied to the satisfaction of such judgment, and such application may not be prevented by the insolvency or discharge in bankruptcy of the insured, nor by the cancellation of the policy or a settlement between the insurer and the insured. The third regulation merely prescribes the method by which the two preceding ones may be given effect. 'Regulation of the payment' is the single objective of the act."

It does not, therefore, appear that any property right or interest was created in the judgment creditor in and to the insurance fund itself by said act; but such regulatory requirements were provided, respecting the payment of said fund by the insurer, as to require it to be made ultimately available to the judgment creditor and paid him by the insurer to be applied as a payment upon the indebtedness of the judgment debtor to him. " 'The regulation of such payment' is the single objective of the act.'' The payment is so regulated as to make such fund available to the judgment creditor as a payment upon his judgment claim. If the ultimate payment is not made within thirty days from the date of the rendition of his judgment against the assured, the remedy in equity is given him by creditor's bill or equitable garnishment against his judgment debtor and the insurer, which he may use to reach said fund and apply it as a payment upon his judgment against the judgment debtor. In the meantime, by force of the act, he has a lien upon the insurance fund, temporary in nature, from the rendition of his judgment against the assured. The purpose of the entire act was to remedy mischiefs arising from a certain situation stated; and said act is, therefore, to be regarded as remedial in purpose and operation.

6—The contract in question provided an unconditional agreement to insure the assured against loss from liability for damages imposed by law as a result of the ownership, maintenance, and use of the automobile described therein, within the United States of America and Canada, for bodily injuries including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons, within the limits of the company's liability for such injury, as shown in such contract or as such limits were provided to be determined therein.

The insurer, by a clause in said contract denominated ''Omnibus Coverage,'' agreed that the benefits of such contract, subject to the conditions, limitations, and agreements therein, should extend to any person or persons while riding in or legally operating such automobile, provided such use or operation was with the permission of the ''Named Assured'' or, if the ''Named Assured'' was an individual, with the permission of an adult member of the household of the ''Named Assured,'' other than a chauffeur or a domestic servant. By the terms of said contract, the insurer also engaged to investigate all accidents covered by the contract and to defend in behalf of the assured any claim or suit covered by the contract and brought against the assured for damages suffered or alleged to have been suffered on account of bodily injuries or property damage and to pay all costs taxed against the assured in any such suit and interest accruing after the entry of judgment on that part of any judgment within the limits of liability of the company. It agreed that the term ''Assured,'' as used in the contract, should include the ''Named

Assured'' and any other person included in the ''Omnibus Coverage'' clause but that the term ''Named Assured'' should apply only to the person named in the statements. The only person named in the contract under the heading of ''Statements'' as the ''Assured'' was one Mike Rossi, to whom the contract herein was originally issued.

By the terms of said contract, the defendant insurer agreed that the insolventy or bankruptcy of the assured should not relieve the insurer of any payment otherwise due thereunder and that, in case execution against the assured should be returned unsatisfied because of such insolvency or bankruptcy, the judgment creditor should have a right of action against the insurer, under the terms of the contract, to recover the amount of the judgment in said action, not exceeding the limits in the policy. It was further provided, by the terms of said contract, that no action should lie against the insurer to recover upon any claim or for any loss brought within two years after the amount of such claim for loss should have become fixed and rendered certain, either by a judgment against the assured after a trial of the issue or by agreement between the parties with the written consent of the insurer. The respondent herein, as plaintiff, has reduced her claim to judgment against the assured and has clear right to subject the insurance fund in the hands of the insurer due the assured to the payment of the same through the process of garnishment at law. By the terms of the contract, the promise of the insurer has become absolute. [Brucker v. Georgia Casualty Co., 32 S. W. (2d) 1088, 326 Mo. 856; Finkle v. Western Auto Ins. Co., 26 S. W. 843; Wehrhahn v. Ft. Dearborn Casualty Underwriters of Chicago, Ill., 221 Mo. App. 230, 1 S. W. (2d) 242; Section 13196, R. S. 1929.]

It has long been held that, under contracts of the character involved herein, upon the liability for loss attaching upon the assured and becoming fixed as to him, the insurer becomes the debtor of the assured for the amount of such loss as fixed and, as such debtor, becomes liable to garnishment by the judgment creditor. [Brucker v. Georgia Casualty Co., supra; Finkle v. Western Auto. Ins. Co., supra; Wehrhahn v. Ft. Dearborn Casualty Underwriters of Chicago, Ill., supra.] The legal remedy for a creditor, when the property is a debt of some third person to his debtor, is a statutory proceeding by garnishment. [Geist v. St. Louis, 156 Mo. 643, 1. c. 647.]

7—At the time of the enactment of the Act of 1925, the judgment creditor had, therefore, a remedial right, by garnishment at law under execution issued upon his judgment against the assured, to reach the insurance fund under unconditional contracts where the insurer became bound to indemnify upon liability for loss incurred by the assured becoming fixed—of like or similar character with the one involved herein.

8—The act did not, with respect to such contracts as that involved

herein, create any new right in the judgment creditor so far as making the insurance fund available to him is concerned. He had such right, as stated, at the time it was enacted by execution and garnishment to make the fund available and apply it as a payment upon his judgment. The act merely afforded a new remedy through equity.

The most that can be said is that new means were provided by the regulations made by which the fund might be made available and a new remedy provided; but, even so, or if it were held that a new right was created in the fund itself or in the means by which it was made available, the new remedy thus provided did not operate to exclude the existing legal right by execution and garnishment; because such remedy becomes operative only when such fund cannot be reached by execution and garnishment or otherwise satisfied at law. Such remedy was not designed to become operative so long as the fund might be reached by execution and garnishment or so long as execution might be otherwise satisfied. Among the mischiefs intended by the act to be remedied was a situation which, when found to exist, prevented the satisfaction of the judgment creditor's claim out of the insurance fund by execution and garnishment or otherwise. To have made an exclusive remedy, said sections should have provided a remedy covering the whole ground, including that covered by the existing right. A remedy in equity is never available except when there is no adequate legal remedy, and it was the purpose of the act to furnish such remedy only when there is no adequate legal remedy.

A creditor's bill or an equitable garnishment is a distinct and well defined common law procedure. It must be assumed that the Legislature, in authorizing its use, contemplated its employment under the same circumstances under which it became available or was authorized at common law—that is that it might be invoked in instances where the property and funds, including choses in action, of the judgment creditor could not be reached by execution or when execution could not be otherwise satisfied. The remedy given by the act is based upon the fact that an execution cannot be otherwise satisfied—that is, by garnishment or in any other manner. If execution can be satisfied by garnishment or otherwise, the equitable procedure is not available.

Respecting the remedy afforded, the Supreme Court, in the case of Schott v. Continental Automobile Insurance Company, supra, said:

"The remedy provided for in the act is essentially that of a creditor's bill or equitable garnishment. It is one that has long been applied by courts or chancery, and one which may be invoked by a judgment creditor when the property and funds, including choses in action, of the judgment debtor cannot be reached by execution, and when execution cannot be otherwise satisfied. [Pendleton v. Perkins, 49 Mo. 565; Geist v. St. Louis, 156 Mo. 643, 57 S. W. 766, 79 Am. St. Rep. 545.]"

It was not its purpose to destroy any remedy by which the insurance fund could be made available to the judgment creditor; but its purpose was to afford another remedy by which, with existing remedies, such funds, under all conditions, might be made available and subject to the payment of his judgment.

Again, that the Legislature had no intention of abrogating existing remedies is shown by the language used, as it relates to the new remedy prescribed by the act, which is "if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment." [Section 5899, R. S. 1929.] There is thus a period of thirty days intervening between the establishment of the judgment creditor's rights against the assured—and incidentally against the insurer by a judgment against the assured—and his right to assert the remedy provided for the enforcement thereof.

True, the statute, by force of its terms, asserts a temporary lien for him against the insurance funds in the insurer's hands; but it gives him no right of action to enforce such lien within that time. If such remedy is exclusive, then, during a period of thirty days, the judgment creditor is without a right of action upon his own initiative or otherwise. An insurance company might become hopelessly insolvent in such time.

10—Again, new remedies are deemed to be permissive only, unless the contrary appears from some direct expression or from implication so strong as to be irresistible. [Davidson v. Schmidt, 146 Mo. App. 358, 1. c. 368, 124 S. W. 552; State v. Dalton, 134 Mo. App. 517, 114 S. W. 1132.] Repeals by implication are not favored, and there is no prima facie legislative intent to that effect. [Davidson v. Schmidt, supra; State v. Dalton, supra; Young v. Kansas City, St. J. & C. B. Ry. Co., supra.] Such repeals are not adjudged to occur except where they are inevitable or it is obvious that such result was intended by the Legislature. [State v. Dalton, supra.] That the remedy afforded by the Act of 1925 was intended to be permissive only is not negatived by any direct expression, affirmatively or negatively stated, or by implication arising from anything that is said therein. The rule is that, if a statute gives a remedy in the affirmative without containing any expressed or implied negative for a matter which was actionable at common law or by statute, this does not take away the common-law remedy or the statutory but the party may still pursue the old remedy at common law or the old statutory remedy as well as the new remedy by the new statute. In such cases, the new statutory remedy will be regarded as permissive. [Hickman v. The City of Kansas, 120 Mo. 110, 1. c. 117-118.]

11—There is no repugnance between the remedy provided in the act and that existing for execution and garnishment thereunder. The

same result is sought by both. There are no antagonisms between them. The one is only more elastic and expansive than the other and will uncover and reach situations which the other cannot. The contention of appellant that Sections 5898 and 5899, being special and of later enactment than the general statutes relating to garnishment, repeal general statutes or engraft an exception thereon is not well made and has no application.

The act does not require that the judgment creditor shall proceed in equity or not at all. There is nothing in the language used to indicate that he may not proceed otherwise, by execution immediately upon his judgment becoming final or thereafter at any time. It merely provides that he may proceed in equity after thirty days. That it was not intended by said act that such remedy as it provided should be exclusive seems the more apparent when the purpose of its enactment is kept in view—that of making the insurance fund available to the judgment creditor and requiring its application to the payment of his claim against the assured when reduced to judgment against him and of providing a remedy for its enforcement, regardless of whether the contract of insurance involved provided indemnity against loss first sustained or against liability for loss imposed. It must be assumed that the Legislature was fully advised of the existing legal remedies. It was not its purpose to abrogate any of them. It was its purpose only to furnish some adequate remedy in equity where the remedy at law was inadequate or did not exist so that, by the two, the entire field would be covered.

12—We have no fault to find with the propositions embodied in appellant's assignment of error number 3 to the effect that special statutory provisions prevail over general or that statutes of later enactment prevail over prior ones where the provisions are contradictory or so inconsistent as to be repugnant and made impossible for both to stand. Such is the usual rule; but such proposition has no application to the determination of the question involved herein as to the continued existence of the remedy by execution and garnishment at law; for the reason that Sections 5898 and 5899, Revised Statutes 1929, do not, by anything said therein, conflict with the provisions of the general statutes relating to execution and garnishment and do not create any exception thereto.

It is therefore held that such remedy is not exclusive.

13—Neither can it be successfully contended that the procedure herein, by execution and garnishment thereunder, cannot be maintained for the reason that, by the said Act of 1925 and Sections 5898 and 5899 thereof, Revised Statutes 1929, the relationship between the insurer and the assured under casualty contracts, such as the one involved herein, has been so changed that there is no longer a debtor and creditor relationship existing, necessary to support a garnishment. Nothing is found in the act declaring that such relationship

shall no longer exist or from which such fact might be found as a matter of implication. At the time of the passage of the act, the insurer was the debtor of the assured. [Brucker v. Georgia Casualty Co., supra; Finkle v. Western Auto. Ins. Co., supra; Wehrhahn v. Ft. Dearborn Casualty Underwriters of Chicago, Ill., supra.] The relationship of debtor and creditor existed between them. The insurer is yet to be regarded as the debtor of the assured under said act, the same as prior to its enactment. The relationship of creditor and debtor still exists between them. The insurer still owes the assured by reason of the terms of his contract and the law as formerly. The fact that the insurer is required to pay all or a part of such insurance fund to the judgment creditor in satisfaction of his claim against the assured does not make the insurer any less the debtor of the assured. The insurer is still indebted to the assured. The result of the statute is to impound the indebtedness due the assured from the insurer for the purpose of satisfying the assured's indebtedness to the judgment creditor and, while so impounded, to enforce its application to such satisfaction, just as the statute with relation to garnishment effectuates the same result in impounding such insurance money in the hands of the insurer and compelling its application to the satisfaction of the judgment. That by said act a lien may be conferred upon the insurance money in the hands of the insurer in favor of the judgment creditor does not change the relationship of debtor and creditor between the insurer and the assured. It is only a part of the remedy afforded in aid of compelling the discharge of the assured's indebtedness to the judgment creditor by the application of money due or belonging to him in the hands of the insurer. No right of ownership to said funds in the hands of the insurer is thereby conferred upon the judgment creditor. The funds still belong to the assured but cannot be paid him by reason of such lien. The case of Miller v. Collins, 40 S. W. (2d) 1062, does not determine, as contended by appellant, that such relationship of debtor and creditor no longer exists by reason of said act. Therefore, it is no authority for appellant's contention.

14—It is next contended that Mike Rossi, the "Named Assured" under the contract issued by defendant insurer and involved in this action, was not at the time of the accident occasioning the injuries to the respondent the owner of the model A Ford which defendant Tony Rossi was driving but that Tony Rossi was the legal owner of such car and was not operating the same by permission of the said Mike Rossi as such permission is contemplated within the meaning of the contract but was operating said car by virtue of his own right as owner and that, therefore, the accident and consequent injuries to respondent did not arise as a result of the ownership, maintenance, and use of such automobile by Mike Rossi, the "Named Assured," and are not covered by the terms of the contract. To

this contention, we are unable to agree. While Mike Rossi was not, in fact, the owner of said car at the time, the insurer had, by the terms of the contract and the endorsements thereon, engaged that he was to be treated as the owner of said car and as the "Named Assured" under said contract for all the purposes thereof, with full knowledge at the time that he was not such actual owner but that the assured Tony Rossi was. Having knowingly entered into such agreement, it cannot now be heard to contend that Mike Rossi is not to be treated and considered, for any of the purposes of said contract, as the owner and user of said car and the one by whom the same was maintained and as the "Named Assured" under such contract. By the terms of its contract, the insurer engaged to insure the assured for damages as a result of the ownership, maintenance, and use of such automobile for bodily injuries accidentially suffered or alleged to have been suffered by any person or persons and, by a clause known therein as "Omnibus Coverage" clause, agreed that the benefits of such contract, subject to its conditions, limitations, and agreements, should extend to any person while legally riding in or operating said automobile, provided such use or operation should be with the permission of the "Named Assured" or, if the "Named Assured" be an individual, with the permission of an adult member of the household of the "Named Assured" other than a chauffeur or a domestic servant. The said Mike Rossi was the only "Named Assured" in such contract. The contract as originally issued covered model T. Ford car 1927 number 14695902 but was thereafter, by endorsement of the insurer thereon or by a rider thereto attached or caused to be attached by said insurer, made to apply to the Ford roadster model 1929 motor number A-1636957 instead of the Ford coupe 1927 model motor number 14695902, such endorsement or "Automobile Substitution" slip being as follows:

"In consideration of the premium adjustment shown herein, it is hereby understood and agreed that the Policy shall cease to cover the following-described automobiles:—Ford 14695902 Coupe 1927 Gasoline and shall cover the following-described automobiles:—Ford Model A A-1636957 Roadster 1929 Gasoline.

"Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the under-mentioned Policy other than as above stated.

"This endorsement, when countersigned by a duly authorized agent of the under-mentioned Company and attached to Policy No. 12420744 issued to Mike Rossi of St. Joseph, Missouri, shall be valid and shall form part of said Policy from twelve o'clock noon, Standard time, of the 6th day of June, 1929.

"(Signed) CENTRAL WEST CASUALTY CO.,
"HAL H. SMITH,
"President.

"Countersigned at St. Joseph, Missouri.
"By Lorren W. Garlicks,
    "Authorized Agent.                                    HM"

The only matter "above stated" contained in said "Automobile Substitution" slip was the recitation therein of the agreement substituting model A Ford 1929 for the Ford coupe 1927. At the time this "Automobile Substitution" slip was issued by the defendant insurer and caused to be attached to and made part of the policy, it had full notice of the fact that the model A Ford car therein substituted for the Ford coupe was not owned by the said Mike Rossi, the "Named Assured" in said policy, but was, in fact, owned by Tony Rossi.

The evidence further showed that, at the time of the accident causing the injuries to the respondent complained of, the same was being driven by Tony Rossi, who was a member of Mike Rossi's household above the age of twenty-one years, with the permission of said Mike Rossi and upon an errand for him. The appellant argues that the said Mike Rossi, not being the owner of said car at the time, could not give permission to any person, as owner, to use and operate said car, in the sense contemplated by the terms of the policy, and that, therefore, Tony Rossi could not have been operating said car with the permission of the said Mike Rossi. The defendant insurer is concluded upon this point by its agreement contained in the "Automobile Substitution" slip that the "Named Assured," Mike Rossi, in the policy as originally issued, should continue the "Named Assured" therein after the execution of the "Automobile Substitution" slip and that any person operating the car with his permission should have the benefits of the insurance under the contract the same as before. The car described in the contract was not insured, but the insurance was to indemnify the owner or other persons lawfully operating such car with the permission of the owner against loss or damage incurred from accidental injury to other persons. The two cases cited by appellant in its brief—that of Whitney v. Employers' Indemnity Corporation, 202 N. W. 236, decided by the Supreme Court of Iowa, and the case of Giroud v. New Jersey Manufacturers' Casualty Insurance Company, 148 Atl. 790, decided by the Court of Errors and Appeals of New Jersey —have no application. The facts in each of those cases are entirely different from the facts herein. The terms of the policy are such as to bring the accident occasioning the injuries to the respondent, as the time and place, within the terms of the contract so that such accident is covered by the insurance provided in said contract.

15—It is next contended by the appellant that the judgment of the court below was not authorized by the verdict of the jury, in that the verdict returned by the jury was for $5,000 and interest (the amount of which interest, however, was not stated) and the

judgment entered by the court thereon was for $5,735.79. This difference between the verdict of the jury and the judgment of the court was the matter of interest amounting to $735.79, not calculated as aforesaid by the jury in its verdict. It appears that the court calculated the interest and, in rendering the judgment, added it to the amount returned by the jury. Section 973, Revised Statutes 1929, requires that, in all cases, interest must be calculated by the jury. The court is not authorized to calculate it. The judgment rendered was not authorized by the verdict of the jury. [Calkins v. Farmers' and Mechanics' Bank, 99 Mo. App. 508; Ward v. Bowman, 228 S. W. 833.] In the latter case, the interest appears to have been calculated by the court; and the jury was, by an instruction, directed to return a verdict for a certain sum, including the interest as calculated. The error thus committed by the court was held to be prejudicial and not subject to cure by *remittitur*. However, the error in this case did not arise in such manner but in the same manner as in the case of Calkins v. Farmers' and Mechanics' Bank, supra, wherein a *remittitur* was allowed. The error of the court in this case in adding the interest necessitates that the judgment herein be reversed and the cause remanded for new trial unless the respondent will, within fifteen days, enter her *remittitur* for $735.79 so as to leave the judgment as though originally entered for $5,000.

Finding no other prejudicial error upon the trial—other than to such interest—and the judgment below for the right party, the court affirms the judgment with costs of appeal against respondent on condition that respondent will enter her *remittitur* as above stated. Otherwise, the judgment is reversed and the cause remanded for new trial. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed upon the conditions stated in the opinion. Otherwise, it is reversed and the cause remanded for new trial. All concur.