## STATE FARM MUT. AUTOMOBILE INS. CO. v. MACKECHNIE.

### No. 11693.

Circuit Court of Appeals, Eighth Circuit.

Sept. 19, 1940.

---

730

F. B. Baylor and George Healey, both of Lincoln, Neb. (G. T. Tou Velle, of Lincoln, Neb., on the brief), for appellant.

P. E. Boslaugh, of Hastings, Neb., and Walter D. James, of McCook, Neb. (Charles H. Yost, of Fremont, Neb., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal by defendant from a judgment holding it liable to plaintiff under an indemnity insurance policy issued by defendant on account of damages suffered by plaintiff as a result of an automobile accident. It will be convenient to refer to the parties as they were designated in the lower court.

On April 19, 1936, plaintiff sustained personal injuries while riding as a passenger in a 1928 Studebaker bus near Denton, Texas. At the time, she was a member and assistant director of the Midland College Choir, an unincorporated association of students and teachers in the music department of Midland College of Fremont, Nebraska. Oscar Lyders was director of the Midland College Choir, which selected its own officers, including a president, secretary and treasurer. The Studebaker bus had a seating capacity of twenty-five passengers, and was purchased by Lyders for the specific purpose of transporting and conveying on concert tours the Midland College Choir. When the accident occurred, John Lyman was driving the bus. The college and the choir paid Lyders for the use of the bus at the rate of 20¢ per mile, and out of the amount thus paid to him, Lyders paid all expenses of operation, including compensation to Lyman at the rate of 4 cents per mile. Plaintiff, following the accident, sued Lyders and Lyman in the District Court of Dodge County, Nebraska, to recover damages for her injuries, and on April 30, 1937, recovered judgment against each of them in the sum of $6,888.35. The cause of action was based upon alleged negligence in maintenance and operation of the Studebaker bus. On appeal, the Supreme Court of Nebraska affirmed this judgment. Mackechnie v. Lyders, 134 Neb. 682, 279 N.W. 328. Plaintiff then caused execution to issue upon the judgment, which was returned unsatisfied on May 27, 1937, whereupon she commenced garnishment proceedings under the Nebraska statute against the defendants Lyders and Lyman in the District Court of Dodge County, Nebraska and against defendant here, State Farm Mutual Automobile Insurance Company. The insurance company, in the garnishment proceedings, denied indebtedness to Lyders and Lyman, and upon its answer the court remitted plaintiff to the statutory remedy of bringing action for unsatisfactory disclosure. Secs. 20-1026 to 20-1030, Comp.Stat.Neb. 1929.

Plaintiff then instituted this action against the insurance company to recover upon a policy of automobile public liability insurance issued by defendant to Midland College Choir, but which plaintiff maintained contained provisions and endorsements insuring others. She also claimed the right to maintain the action by virtue of the provisions of the statutes of Nebraska providing for garnishment in aid of execution. Sec. 20-1030, Comp.Stat.Neb.

1929. The action was tried to the court without a jury, no request having been made by either party for a jury trial, and the lower court found all of the issues in favor of plaintiff, concluding as a matter of law that: "The combined effect of the school bus endorsement attached to the policy, the omnibus clause of the policy, and the insolvency clause of the policy was to give plaintiff, a teacher riding in the Studebaker bus described in the policy, a right of action upon the policy to enforce payment of her unsatisfied judgment against Oscar Lyders, the owner of the bus, and John Lyman, the driver of the said bus." The court also held that while the assured named in the policy was Midland College Choir, the policy was a valid contract insuring Lyders personally because the officers or members of an unincorporated association making a contract in its name are personally bound by its terms and the contract is binding upon the other party who is estopped after receiving value under it to deny liability. The court also held that the omnibus clause of the policy constituted John Lyman an assured and that none of the exclusions of the policy invoked by defendant operated to bar recovery. The court entered judgment against the defendant for the full amount of plaintiff's judgment, plus costs and an attorney fee.

On this appeal, defendant contends in substance that: (1) The policy No. 4011607 lapsed and was never reinstated; (2) application No. 4025858 effected an executory contract of insurance wherein Midland College (not Midland College Choir) was the assured; (3) defendant is not liable for an injury sustained by an employee of the assured, Midland College.

In considering the issues, it will be necessary to state the facts in some detail. Under date August 26, 1935, defendant issued its combination motor vehicle policy No. 4011607 upon the 1928 Studebaker bus. The named assured in this policy was "Midland College Choir." Lyders paid the premium, which carried the policy to February 26, 1936. On February 17, 1936, in response to a notice that another premium would soon be due, Lyders wrote the defendant, advising that the Studebaker bus was in a repair shop and until it was decided what was to be done with it, he would permit the policy to lapse, but as soon as it was repaired he would pay the premium. On February 26, 1936, defendant wrote Lyders in response to his letter of February 17, as follows:

"This is in reply to your recent letter informing us that the Studebaker School Bus insured under the above numbered policy (No. 4011607-Nebraska) is in the process of being repaired. We have accordingly suspended the insurance under this policy.

"We shall be glad to place the insurance under policy No. 4011607-Nebraska in force upon receipt of the required premium and we trust that when the 1928 Studebaker Bus is operated again, we will receive a remittance for reinstatement of the liability and property damage coverages."

On April 7, 1936, Lyders delivered to Herman Engel, the agent of the defendant, at Fremont, Nebraska, his check for $28.00, and advised him at the time that the check was to pay for a reinstatement of the insurance and to fulfill the requirements of defendant's letter of February 26, 1936. Engel forwarded this check to the state agent of the defendant in Nebraska, who in turn forwarded it to defendant's home office in Bloomington, Illinois, with the following letter:

"State Farm Mutual Ins. Company,
    "Bloomington, Illinois

"Gentlemen:

"In Re: Policy #4011607-Neb.—
        "Midland College Choir, Fremont, .
        "Nebraska.

"Enclosed herewith is a check for $28.00 signed by Oscar Lyders which is in payment of premium call for like amount which was due February 26, 1936.

"We are requesting that Mr. Engel secure a new application and school bus inspection report and as soon as they papers are received, will immediately forward to your office.

        "Yours truly,
            "E. A. Tyler, Ins. Director,
            "By (Signed V. R. Hoover)"

Defendant cashed the check on April 21, 1936. On April 20, 1936, the home office of defendant was notified by telegram that plaintiff had sustained injury. In this telegram reference was made to the policy of insurance issued to Midland College Choir. Subsequent to April 19, 1936, defendant wrote letters to Lyders referring to Policy No. 4011607, and asked him to cancel the policy voluntarily because it was an unusual risk. Defendant was notified of the commencement of the action against Lyders and Lyman in the Nebraska State court, and employed attorneys to conduct the de-

fense and the appeal, after notice that it did not waive the right to deny liability under any policy issued to "Midland College." It did not make any reference in its notice of non-waiver to the policy issued to Midland College Choir.

Lyders delivered to Engel, on April 7, 1936, an application later given No. 4025858. On this application, Lyders wrote, before delivery, after the printed words, "Name of applicant," the words, "Midland College by Oscar Lyders."

It is to be observed that the letter of February 26, 1936, above set forth, contains a definite offer to reinstate Policy 4011607. Defendant, in this letter, states that it will "be glad to place the insurance under policy No. 4011607-Nebraska in force upon receipt of the required premium and we trust that when the 1928 Studebaker Bus is operated again, we will receive a remittance for reinstatement of the liability and property coverages." While an offer must be so definite in its terms, or require such definite terms in its acceptance, that the promises and performances of each party are reasonably certain (Restatement of Law of Contracts, Sec. 32; Pennsylvania Lumberman's Mutual Fire Ins. Co. v. Meyer, 2 Cir., 126 F. 352), we are of the view that this letter plainly offered to reinstate the policy. Defendant was not referring to insurance in general, but to "the insurance under policy No. 4011607-Nebraska in force upon receipt of the required premium." The letter expresses defendant's hope that it would receive remittance "for reinstatement of the liability and property damage coverages." It notified Lyders of the suspension of the insurance "under this policy." No other contract or policy of insurance was referred to and there was no coverage under the policy except liability and property damage. The lower court properly construed the letter as an offer to reinstate on payment of the premium. Williston, Contracts, Rev.Ed., Sec. 26; Restatement Law of Contracts, Sec. 25.

According to the terms of the offer, all that the insured was required to do to accept it, was to pay the premium. This, Lyders, the owner of the bus and manager and director of the Midland College Choir, did on April 7, 1936, by giving his personal check for $28 to Herman Engel, defendant's agent. This was the correct amount of the premium. The check was payable to the defendant. It had on it a written notation, "For Pol. #4011607-Neb.," and

was cashed by the defendant with knowledge that it was given to pay for reinstatement of the insurance policy pursuant to the requirements of the letter that was written by it.

But it is urged that Lyders, at the time of giving this check, signed an application for insurance and that any oral negotiations or statements made by him prior to the execution of this application were merged in the application. On this application, which later was given No. 4025858, Lyders wrote, before delivery, after the printed words, "Name of applicant," the words, "Midland College by Oscar Lyders." If this instrument stood alone, it might indicate that there was to be a new insured and therefore a new contract of insurance. However, at the top of the application, Engel wrote in lead pencil "Reinstate Pol. #4011607-Neb.," and in the body, in Engel's handwriting, was written "reinstate." On April 13, 1936, the state office of defendant, at Lincoln, Nebraska, as has been observed, sent the check to the home office of the defendant, and in doing so referred to "Policy No. 4011607-Neb., Midland College Choir, Fremont, Nebraska," and stated that the enclosed was a check for $28, signed by Oscar Lyders, in payment of "premium call for like amount which was due February 26, 1936." Under the record in this case, there is no room for doubt that defendant so understood the transaction and knew that its offer to reinstate the suspended policy was being accepted. Mr. T. C. Campbell, a vice-president of the defendant, testifying in its behalf said:

"Q. I believe that you testified, Mr. Campbell, that where a policy has lapsed, and it is desired to reinstate it, that where this occurs more than 30 days, it is your custom to issue a new policy? A. That is right.

"Q. And in this particular case your Company knew that it was the desire of Oscar Lyders to reinstate Policy 4,011,607, and your Company had written Mr. Lyders under date of February 26, 1936, that you would place the insurance under Policy No. 4,011,607-Neb. in force on receipt of the required premium, did you not? A. Yes."

On May 23, 1936, and again on May 29, 1936, defendant wrote Mr. Engel, asking him to get a cancellation of Policy 4011607-Neb. On April 27, 1936, an official of defendant asked in writing for a list of all insurance on Midland College Choir, Fremont, Nebraska. Among the "live" policies

was listed the policy here in question, "4011607-Neb." This notation was said to mean that the policy was found in the "live" or "current" file. The trial court found an acceptance of the offer to reinstate, and this finding is sustained by abundant evidence.

■ The question before the court was whether in paying the premium Lyders was in fact accepting the offer of defendant's letter. If it be conceded that he and the agent of the defendant did some things not required as an acceptance of the offer, that would not vitiate the act of acceptance as such. The finding of the court that the acts of Lyders constituted an acceptance of defendant's offer necessarily excludes an offer on the part of Lyders to make a different contract. The so-called application is itself ambiguous. At the top, it recites that there is being made an application to defendant to reinstate Policy 4011607. The name of the applicant is given as Midland College, a stranger to Policy 4011607. The word "reinstate" is also written in the policy. Under a contract for reinstatement, all provisions of the former contract are restored and continued in force under the new contract. Wastun v. Lincoln Natl. Life Ins. Co., 8 Cir., 12 F.2d 422; Business Men's Assur. Co. v. Scott, 8 Cir., 17 F.2d 4. The application certainly indicates an intent to reinstate the suspended policy as strongly as it indicates an intent to have issued a new policy. With such possible interpretations, an ambiguity existed, and hence, the written instrument was open to explanation by parol evidence. State v. Commercial Casualty Ins. Co., 125 Neb. 43, 248 N.W. 807, 88 A.L.R. 790. Neither can the application be considered as an ordinary request for the issuance of a policy—a mere proposal for insurance which can become a contract only by acceptance by the insurance company. Couch on Insurance, Sec. 84. Viewed as a part of the entire transaction, it was supplemental to the act of acceptance or it was derogatory of it. The terms which the defendant prescribed were complied with. It is important to bear in mind that this is not a case of a new proposal, an offer not accepted because of a counter-offer. The court has found against such contention and the evidence fully sustains its finding. We conclude that Policy No. 4011607 was reinstated, and it remains to consider whether this policy of insurance covers liability to plaintiff for the injuries sustained by her.

We put aside the contentions advanced as to liability under an executory contract in which Midland College would be the insured, because these contentions are based upon the unwarranted assumption that an executory contract of insurance was effected by the application and its acceptance, rather than a reinstatement of the old policy. We turn, therefore, to a consideration of the reinstated policy, which on its face insured Midland College Choir against liability for bodily injury and other liabilities.

■ By Clause G, defendant agreed to pay the legal liability imposed upon the assured for damages resulting from an accident by reason of the ownership, maintenance or use of the described automobile, on account of "bodily injury and/or death at any time resulting therefrom sustained by any person or persons." The policy contains provision that where in such clause or elsewhere, the unqualified word "assured" is used, it "includes not only the named assured, but also any other person or organization while legally using the automobile, including also any other person or organization legally responsible for the use thereof, provided the disclosed and actual use of the automobile is 'Commercial,' as defined herein, and further provided that such use is with the permission of the named assured who, if any individual, may give such permission through an adult member of his household other than a chauffeur or domestic servant. The provisions of this paragraph shall not apply, however, to any person or organization, or employee thereof, operating an automobile repair shop, public garage, sales agency, or service station, as respects any accident arising out of the operation thereof, nor to any employee of an assured with respect to any action brought against said employee by another employee of the same assured on account of an accident arising out of the operation or use of the motor vehicle in the business of such assured. The insurance provided by this policy shall be applied first to claims or suits against the named assured within the limits of liability stated in the policy and the remainder, if any, to claims or suits against other assured."

The policy gives protection, in general, against liability for bodily injuries. Plaintiff has recovered judgment against Lyders and Lyman based upon their negligence, and hence, each of them is liable by force

of this judgment. The contention that Midland College is an assured by virtue of the above quoted clause as one "legally responsible," and that the action is by an employee of Midland College against another employee is not tenable here because there was no action against Midland College. Plaintiff was not an employee of either Lyders or Lyman, and this exemption clause has no application in this case. Kaifer v. Georgia Casualty Co., 9 Cir., 67 F.2d 309; Employers' Mutual Liability Ins. Co. v. Tollefsen, 219 Wis. 434, 263 N.W. 376; Brandt v. Employers' Liability Assur. Corp., 228 Wis. 328, 280 N.W. 403.

It is further urged by defendant that its liability was restricted to a commercial use of the bus. "Commercial" was defined as follows: "The term 'Commercial' means transportation or delivery of goods or merchandise in direct connection with the Assured's business or occupation as disclosed on page 1 of this Policy, and does not include, and the Policy does not cover, when the described motor vehicle is being used to tow a trailer or when there is renting or livery use of the described motor vehicle or while any one is being carried for a consideration unless it is otherwise expressly stated on page 1 of this Policy or set out in written endorsement hereto attached * * *."

Under this definition, the term "commercial" does not include when there is renting or livery use of the described motor vehicle, or while anyone is being carried for a consideration, "unless it is otherwise expressly stated on page 1 of this policy or set out in written endorsement hereto attached." Turning now to page 1 of the policy, we find it there definitely set forth that, "The purposes for which the motor vehicle is and will be used are: Commercial, as defined herein, or for members of choir." The bus was being used for transporting members of the choir on its usual tour, and by endorsement attached to the policy it is provided: "(1) That the automobile or truck described therein may be used with the equipment thereon as in the policy described, or with equipment adapted to the purpose, as a school bus for the purpose of carrying for compensation, school children and/or teachers to and from the school hereinafter named and/or to and from games, outings and similar expeditions connected with, or a part of the school work."

Hence, under the very terms of the policy, the word "commercial" included livery use of the described motor vehicle because that was the use specifically designated on page 1 and definitely set out in an endorsement attached to the policy. In addition to this, the bus, at the time plaintiff received her injuries, was carrying the baggage of the members of the choir, and this was a transportation of goods in direct connection with the business of the assured. Journal Co. v. General Acc. Fire & Life Assur Corp., 188 Wis. 140, 205 N.W. 800.

As the policy provided that the protection given should apply to persons other than the named assured only if the use "was with the permission of the named assured," and the Midland College Choir was the named assured, and Lyders owned the bus, it is contended that the choir could not give the required permission for use of the bus. Generally, the owner has the power of control and the right to give permission to use. The Midland College Choir was to all intent and purposes the lessee, and as such a properly named assured and a party having power to give permission to use. Lyders bought and owned the car for the choir's use and was paid 20¢ a mile for that use. The Midland College Choir as a virtual lessee had the right of control and the power to grant permission to use. Lajoie v. Central West Casualty Co., 228 Mo.App. 701, 71 S.W.2d 803. Either the Midland College Choir was the virtual lessee or it was the name used by Lyders in his contract with the defendant, and he was in reality the named assured. Both the members of the choir and Lyders were present on the bus. He employed John Lyman as the driver of the bus with the approval of the choir, and the choir was being transported in a bus which had been purchased for its use. The Midland College Choir certainly had the capacity during the period of rental to grant permission to use the bus, but if that can be doubted, then certainly Oscar Lyders as the assured had such right.

The contention of the defendant would, under the admitted facts, render the omnibus clause in this policy wholly without effect. Such contracts should be construed, if reasonably possible, to give force and effect to all their provisions. Shepherd v. Mutual Life Ins. Co., 8 Cir., 63 F.2d 578.

It is finally urged that the choir as assured, included plaintiff, and hence, defendant was not liable for bodily injuries to the assured by express provision of the

contract. It is probably a sufficient answer to this contention to note that it was not urged by the defendant in its answer. As it seeks to rely upon a stipulation in the policy to defeat recovery, it was incumbent upon it affirmatively to plead a breach of that stipulation as a defense. Farmers & Bankers Life Ins. Co. v. Mathers, 135 Neb. 757, 284 N.W. 286; Kahnweiler v. Phenix Ins. Co., 8 Cir., 67 F. 483. For the purpose of sustaining the judgment, we might in exceptional circumstances, presume the pleadings had been amended, but we can not indulge such a presumption for the purpose of reversing a judgment. The lower court, in referring to this contention, said: "While the named assured was 'Midland College Choir,' it was a valid contract insuring Oscar Lyders personally, because the officers or members of an unincorporated association making a contract in its name are personally bound by its terms. 5 Corp.Jur. 1345, 1351; 7 C.J.S., [Associations, §§ 15, 20, 32, pp.] 41, 50, 75, and the contract is binding on the other party also, who is estopped, after receiving value under it, to deny liability. Cleland v. Anderson, 66 Neb. 252 [92 N.W. 306, 96 N.W. 212, 98 N.W. 1075, 5 L.R.A.,N.S., 136]; Egan v. Bonacum, 38 Neb. 577 [57 N.W. 288]; Reding v. Anderson, 72 Iowa 498, 34 N.W. 300; Detroit L. G. Band v. First Michigan Independent Infantry, 134 Mich. 598, 96 N.W. 934; Petty v. Brunswick & W. Ry. Co., 109 Ga. 666, 35 S.E. 82."

■■■■ But if we accept defendant's contention that the Midland College Choir was the assured, it would follow that the defendant had dealt with and insured the choir as a legal entity capable to and actually transacting business, exercising a right and power of contract separate and apart from its members. There is no rule prohibiting a collective separate existence for some purposes of the association, apart from its members. It is well settled that one who deals with an association as a legal entity capable of transacting business, and in consequence receives money or other thing of value, is estopped from denying its right to contract. Petty v. Brunswick & W. Ry. Co., 109 Ga. 666, 35 S.E. 82. For purpose of suit, it may be considered an artificial person. United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S. Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762.

■■■■ The school bus endorsement and a letter pertaining to it from Engel to defendant, in which he said, "This bus together with another one they are getting, will be used to transport this choir of about fifty or sixty college students, with the leaders and driver, and they want the passengers in the bus protected, and also liability to others outside of the bus with whom they may have accidents," and as a result of which the school bus endorsement was amended, indicate, we think, an intent by contract to recognize the association as an independent entity, apart from its members. The letter referred to Policy 1142584-Neb., which was issued, to be sure, prior to Policy 4011607-Neb., as the policy on the bus, but it is clear that it was the cause of the endorsement being placed on Policy 1142584 and the policy of the succeeding year. Subsequent letters of the defendant pertaining to cancellation because of the hazards of trip busses, lend further color to such theory. The school bus endorsement and these letters, first asking for protection for the passengers, later complaining of the great hazard, indicate that the insurer was recognizing and adopting the theory of entity of the association, separate from its fluctuating personnel.

■■■■ It is also argued that indemnity did not extend to the acts of Lyders because he was not an officer or member of the choir. He testified that he was a director and in that capacity it must be assumed that he was in the same relationship to the association as an officer. As director "he had charge of things." Here, again, it is to be observed that the lower court found in legal effect that Lyders was the named assured, and that "the policy covered the legal liability of Oscar Lyders for the injuries." He was the owner of the bus. He paid for the insurance, and while the policy was issued in the name of the Midland College choir, an unincorporated association, yet Lyders negotiated the contract and was personally bound by and entitled to the protection of its terms. Even if his acts were not covered, the liability for Lyman's negligence would remain. The bus was being used in the exact business and purpose for which the insurance was issued. Lyders personally selected and employed the driver, and it was because of the negligence of the driver that judgment was rendered against Lyders in the State court.

We are of the view that the lower court reached the correct conclusion on the facts and the law.

The judgment appealed from is therefore affirmed.